Good morning, Your Honor. May it please the Court, I'm Mark Silversmith for Defendant Appellant Kevin Baires-Reyes, and I would like to reserve some time for rebuttal. This case presents a very clear and a very core prejudicial Fourth Amendment violation where the officers went into a home without a warrant at 4 a.m. and intruded into a bedroom. I think the main issue in this case is whether this Court can remedy this error at this point, this plain mistake that was made by the District Court. My understanding is your client was a guest in this house? That's correct. Does he have standing? Under Minnesota v. Olson, he certainly does. Doesn't that require that you have used to be more than a temporary guest under Minnesota v. Olson? No, no. He absolutely has a guest. It was recognized by a standing. It was recognized by all the parties. It wasn't disputed by the Well, it wasn't. The Court made no ruling on it one way or another. It wasn't raised, correct? It wasn't disputed. Well, let's not play with words. It wasn't raised below. You didn't, the government didn't say he has an absence of standing, and you didn't, the parties didn't stipulate there was standing. The issue just wasn't raised, correct? I don't recall. I raised it in my brief, and it wasn't disputed by the government here. You didn't dispute the standing because you're in favor of it. No, I cited Minnesota v. Olson. I guess, and maybe the government has conceded that issue, and it's not in front of us. I want to ask them. But tell me why, in light of our precedents, you think, and I don't know what the record just shows about how often your client was in this place, but let's assume that he was only in this room one time. You really think that there's standing under our precedents to raise a Fourth Amendment challenge? I do. I do, because this is in a bedroom at 4 in the morning. I mean, I think that's the very core of what the Fourth Amendment protects, is if I bring an intimate partner into my bedroom at 4 in the morning, I don't want the police knocking on my door and bursting into my bedroom with my intimate partner. But that's your standing. What about the guest standing? I think my guest has the same expectation that when he or she comes with me into a home at 4 a.m. to share the bed with me, that my intimate partner has that right not to have the police come in at 4 in the morning. I think that's quite clear. And I think that was the holding at Olson, and if the court is really concerned about this, I did cite that case, and there was no opposition by the government, and so I didn't go further into that. And if the court needs further briefing on that, I am very happy to provide that. Let's go back to the basis on which the district court did rule, and the arguments the government's making on appeal, and see if we can unravel them. The district court said there was an independent source? That's correct. And why is that wrong? Well, it's wrong, and as I conceded, the trial attorney in this case did not make this argument as clearly as he should have, but what was the key evidence against my client was the to Mr. Flores, A.R., who was not, there was no dispute, he was robber one. At the time the police entered the house, they had no idea who robber two was, and their case was built exactly on the observation of my client in that bedroom with the stolen property and wearing those clothes. Now, when they did get a warrant at 12 noon and came back and that implicated Mr. A.R., they, my client was gone. You don't object to the seizure of those items, do you? I absolutely do not. And I wanted to focus on the stuff that in effect was seized or seen the first time through. With respect to your client's DNA, do you really have an argument that they wouldn't have inevitably gotten your client's DNA? Yeah, because the arrest was illegal. They seized him illegally. Well, but they eventually got a warrant. They eventually got a warrant. Presumably they eventually could have gotten an arrest warrant. Not for my client. Yeah, but I understand your argument with respect to the clothes he was wearing at the time and his proximity to the other two people and the things in the room that might have been gone later. But with respect to your client's DNA, wouldn't they have inevitably been able to obtain your client's DNA? I disagree with you, Your Honor, because the only evidence that they would have had for observations which they illegally obtained in that 4 a.m. search in the bedroom. Well, except I thought your argument in this case was, maybe I'm wrong, they eventually got a warrant. They did. Did they have probable cause at the time they entered the house? They had probable cause to look for Mr. Flores' AR and to seize any property that they might have found there related to the robbery. And so your argument is they never would have known that your client was involved in the robbery but for the illegal search? That's right. They said that. They said that he wasn't a suspect at the time they went into the house. They didn't know anything about him. They couldn't identify him from the video. They didn't have a clue. So I'm trying to work, and I think on independent source, I think your argument makes sense. I'm trying to address the government's sort of inevitable discovery issue. And on that one, their problem is that there was probable cause at the time and they should have gotten a warrant then. But I'm still focusing on the DNA. It just seems to me counterintuitive to suggest that they never would have found, never would have been able to obtain your client's DNA. Well, I don't know how, I mean it's all counterfactual obviously, but how they had no clue who my client was. They had no clue that he was involved in the robbery or no suspicion that he was involved. And you know, the London case from this court from 2016, which follows the long line of precedence, says you can't use inevitable discovery. If you had probable cause. Yeah, if you had probable cause. And they did have probable cause. We all agreed. Everybody knew, floor as they are, was Robert Wan. Everybody knew that they had pinged his phone and that he was very likely in the house. Oh, and I wanted to ask you a question about that. There's no challenge in this case to the phone pinging, is there? No. I know there have been subsequent developments on that issue, but there was no challenge in this case. There was no challenge in this case. It wasn't my client's phone. I would have a hard time making that argument. But I have a solid Fourth Amendment violation. I think it's very clear and it goes to the very core of what the Fourth Amendment protects. And what the government is saying is that this court can't correct this mistake at this point. Because it wasn't preserved below. It wasn't. That's what they're saying. And it wasn't really, was it? You argued London. The government came back with independent source because of the warrant. Obviously, the warrant didn't give them the observation evidence, which you're mentioning. But the rebuttal below was that the warrant was infirm. There was no argument that the warrant didn't produce the observation testimony. So the trial judge didn't have the argument you're making right now before him. Why didn't you waive it? Why didn't I waive it? Yes, I concede everything that you've said, Your Honor. It's a very is, he basically said, I am objecting to the search and seizure. I'm objecting to the independent source rule. So the three cases that the government cited were wholly distinct arguments. Is it plain error? Oh, it's plainly plain error. I mean, it's not a waiver in the sense that you said, I don't want to make this argument. It might be a forfeiture, which puts us in the plain error area. So tell us why it's plain. Okay. Well, yes. Under the amendments to Rule 12, I think we're now in plain error territory and it's not a waiver as in a known relinquishment of a right. So there's no... Failing to raise something without knowing relinquishing it is, I mean, maybe technically it's probably forfeiture as opposed to waiver. It's probably forfeiture. So it puts you in the plain error box. Tell us why it's plain error. Because everybody agrees that the property and the clothes and my client's person was not in the house when they came back with the warrant. Everybody agrees that entering into a home and the curtilage at 4 a.m. under London is improper. So it's a core Fourth Amendment violation and there's no exception and it's per se unreasonable. So I think plainly at this point, the government's only rejoinder in their opposition was this inevitable discovery issue, which is precluded precisely by London itself. So I think the error is very plain and it affects my client's rights. If that evidence is not submitted, there's no evidence against him. And it seriously affected the fairness proceeding and it goes to the core of the Fourth Amendment. So it's an important high risk of prejudice seriously affecting a core amendment right. And I think under, you know, under Lawrence v. Texas and Kylo, the heat surge case with the lady of the house, getting into the intimate associations in a bedroom at 4 in the morning is a very important principle, which the court should have should have hold. I mean, I can go back on a 2255 and go back to the district court and argue IAC, or I can say IAC was good cause under Rule 12C3 for this court to issue it at this time. And I think this court has recognized in certain exceptions where it's clear the attorney's strategy was to exclude the evidence, not making the best argument. There's no strategy for not making the best argument. Am I wrong that your briefs don't raise an IAC argument? No, I do. You do? Yeah. It's in the reply. It's in, it's not in your, it's not in your opening brief. Well, I, my, I, I thought it was raised sufficiently and I didn't address the, uh, waiver, potential waiver issue in my opening brief. So I, I, all of that's in the reply brief, Your Honor. Um, and, uh, so it's very plain error and it affected my client. Nobody, it's regrettable that my, uh, client's attorney did not raise this issue in front of the district court. I think everybody agrees, but nobody, I assure you, regrets that more than my client who's sitting in prison while, while we're arguing over whether this court can correct it now or if I have to go back to the, to the district court on 2255 and argue IAC. Um, so I, I think there's, the court also mentioned in the Hawkins case, which I cited, that where an issue doesn't need a further development of a record, that the court can address it. So that's another exception which the court can rely upon. But I, I, I think generally when an attorney makes a suppression motion and raises the issue and says the basic grounds on which he or she is, uh, arguing, that the, that the, uh, court can reverse, that's a rule that the government's asserting doesn't apply. See, and that's, that's what sort of makes me reluctant to take up IAC at this point. Your primary argument is that the, that the lawyer below did enough to preserve this on appeal. And your secondary argument is if he didn't, then there was IAC, right? Well, it's an alternative argument. I understand, but that's, that's why in the first instance, taking it up may not be the appropriate thing to do. Well, it's, you know, it's one or the other. It's or he didn't, and that's good cause for, for my client who was, you know, had, had an appointed lawyer who was doing his best, but, you know, made a mistake. We, you know, these mistakes get made all the time. They're very regrettable. Um, and, and we do our best as courts and, and, and appellate lawyers and to, to try and correct them when we can. Um, I can address that. Yeah, I would like to save some time. Thank you, Your Honors. May it please the Court. Rima Shah for the government. Defendant launches a number of challenges to his conviction, but none of those have merit, most particularly his Fourth Amendment allegation. Well, but let's do the Fourth Amendment analysis. This was an illegal search, was it not? Uh, Your London. Yeah. And I don't believe a lot of things are correctly decided, but we're all stuck with, uh, given this is an illegal search under our precedent, is it not? That's correct, Your Honor. And your independent source argument really doesn't work. The one that the judge made. Your Honor, we believe that most of the evidence defendant challenge in the district court is admissible under the independent source doctrine as defendant conceded the particular, the four items where he's talking about. Uh, that's correct, Your Honor. That none of those would be admissible under the independent source rule. That's correct. However, they are admissible under the inevitable discovery. So that's what that's where I wanted to walk you to. Doesn't the inevitable discovery doctrine say it doesn't apply when you had probable cause to get a warrant? You actually got one. Uh, Your Honor, this court's decision in London stated only that when all the government has shown is probable cause alone, that does not automatically trigger the application of the inevitable discovery doctrine. Rather, the government must do more as it did here. It must show that the officers would have saw a warrant and that in the execution of that warrant, they would have discovered the relevant evidence. How would you have discovered had you gotten a warrant? Is this notion that you would have gotten a warrant and executed it at the very time that you entered the apartment at four a.m. or that you would have gotten, you would have conducted the search when the warrant was issued? Uh, Your Honor, uh, the officers testified that at four a.m. had Norma Ortiz not consented and opened the door, then the officers would have saw a warrant at that time. In S. E. R. 4 13 to 4 14. Officer Bray also testified that the officers would have set up a perimeter around the house. It is completely implausible to think that the officers having already set up surveillance on the house on the house that answers that point. But I'm still interested. You think that you even though you had probable cause at the time and later got a word? Yes, Your Honor, we believe that the argument that defendants argument rests on a misreading of London. London was providing that the fact that probable cause exists alone does not mean that the inevitable discovery exception applies. Reading London in the manner defendants suggest would be contrary to the precedents on which London relied. United States, the image and United States be young. The Supreme Court's decision in Murray, as well as those of every other circuit that has considered the issue, all of which make clear that probable cause alone is insufficient to trigger the application of the inevitable discovery doctrine. Rather, what must be shown is that the government would have sought a warrant that it would have been able to obtain a warrant with facts sufficient to establish probable cause independent of the illegal entry and that in the execution of the warrant, the officers would have So you hear I'm reading from from London, London, I think it is, but however you pronounce it on page. Well, the inevitable discovery discussion begins by saying the inevitable discovery exception does not apply when officers have probable cause for a warrant, but simply fail to probable cause to apply for a warrant, but simply fail to do so. And your argument is that they didn't simply fail to do so. They got one later. Is that that distinction you make? Your Honor, it's that the officers have also shown that they would have sought a warrant and the district court made a finding to that effect. Just a few sentence after the sentences you quote, the court in London cited quoted United States image in which the court stated to quote directly if evidence were admitted simply because probable cause existed the simply because language shows that the London court was speaking to the circumstance in which all the government has shown that probable cause alone existed and has made no showing that the government's would that the officers would have sought a warrant regardless of the initial entry here. It is clear, however, the government has made that required showing and thus London is not speaking to that circumstance and in the Supreme Court's decision in Murray, the majority rejected the dissents per se rule arguing that the inevitable discovery exception should apply only when the officers could show that they had already taken a step towards securing a warrant. Rather, the majority explained that the government need show only that the officers would have sought a warrant and that in making that finding, the district court need not rely solely on the officer's assurances. In keeping with that decision, the district court here made an express finding that the officers would have sought a warrant based on Officer Bray and Officer Tone's testimony that had Norma Ortiz not opened the door, they would their first step would have been to secure a perimeter and then seek a warrant. Thus, it is simply implausible to think, as defendant argues, that the officers would not have been able to identify Byrace Rays as the second suspect. Indeed, as the district court found, Byrace Rays, the police would have been looking for evidence of the second suspect even though they did not know ex ante who that particular individual was and that all evidence relating to the second suspect was in plain view. And thus, upon execution of the warrant, they would have discovered all of it. In essence, Byrace Rays' argument on appeal is essentially protesting the district court's lack of crisper factual findings. However, the reason for that is because he did not make this particular argument below as he, in fact, concedes both that argument. And you also agree because he didn't make it, the district court never addressed the inevitable discovery rule? Your Honor, the district court made its findings in the course of the independent source doctrine. Right, right. So the district court never made a determination about whether these items would have been inevitably discovered? Well, Your Honor, we believe that the district court's findings here are sufficient to affirm. That's not what I'm asking. They may be sufficient to affirm. You agree that the district court never addressed the inevitable discovery doctrine? Your Honor, the district court did not use that term, but we believe that the inquiry under Or analyzed the cases? Your Honor, it did not use the term inevitable discovery. Analyzed London under those terms, or analyzed Murray. I'm not sure why you're afraid to just say the district court, that it didn't come up below because the other side didn't raise it. Your Honor, that's correct. So my question is, you think the district court's findings are sufficient now for us to dispose of it. Why shouldn't we have a limited remand for the district court to address it? Your Honor, we think that's unnecessary in this case, because as the Supreme Court and this court have said in Ramirez-Sandoval, as well as Murray and Nix, the independent source doctrine and the inevitable discovery doctrine are closely related and an extrapolation from one another. The core inquiry under both is whether the police would have discovered the evidence absent any misconduct. Thus, a core part of the inquiry under both is whether the police would have been able to obtain a warrant, absent any facts tainted by the illegal entry, and whether they would have sought a warrant regardless. Here at the district court, although it made a terminological error, it made those express findings that the officers would have sought a warrant and that they would have been able to obtain a warrant. And in the execution of the warrant, they would have found all evidence relating to birace raise. Can I ask you about the standing issue? Was it raised below? Do you concede it? What's your position on it? The government did not contest the defendant's standing to make this argument below, and thus I suppose it's been conceded. In addition, defendant makes a number of other challenges to his conviction, but all of those similarly lack merit. In particular, he argues that Officer Tone's testimony as to the affirmation of Cesar Ortiz's alibi constituted an admissible hearsay, but that argument clearly fails under this Court's decisions in United States v. Busby and United States v. Walling, which make clear that the admission of certain testimony for the purpose of explaining the facts and circumstances of the government's investigation is admissible. In particular, the reason for that testimony was because defendant made a strategic choice to contest the government's investigative process. There was simply no substitute for the fact that part of the reason the government sought to arrest birace raise and not Cesar Ortiz was the fact that Cesar Ortiz had provided an alibi, and thus the government introduced no testimony involving out-of-court statements, but rather merely affirmed that fact. Similarly, all of defendant's other contentions lack merit. If this Court has no further questions, we urge you to affirm the conviction below. In addition, we urge you to find that the defendant's final argument as to whether Hobbs Act robbery constitutes a crime of violence under 924C3A is waived. Defendant essentially made a series of arguments in his brief, and then in the last page or two, added another argument and urged the Court to offer supplemental briefing if it did not rule in his favor on the first few arguments. Under those circumstances, the Court should... Why should we consider it waived? It's an issue now in 12 or 13 cases. He raises it, you respond to it. It has a significant effect on the sentence. Why should we consider it waived? You weren't deprived of the opportunity to brief it or argue it, were you? What, sorry? The government wasn't deprived of the opportunity to brief this issue? Your Honor, the defendant did not fully brief this argument. He simply urged the Court... That's not what I'm asking. You briefed it, didn't you? Well, we only offered a similarly limited response, and if this... Would you like a more fulsome response? Your Honor, we believe that the briefing is sufficient to affirm, because as every other circuit court... I understand that's your position. You keep repeating it. But we have a substantial effect on a sentence with an issue that's going to be resolved by this Court in another case. Waiver is a discretionary doctrine. Why should we apply it here? Your Honor, because it would encourage a practice of defendants making a series of arguments in their brief, and should those primary arguments fail, reserving a page or two at the end and seeking supplemental briefing on their backup arguments, which is not a trend that we believe this Court should encourage. In any event, we think it's unnecessary here because this Court can clearly affirm because Hobbs Act robbery falls within the elements clause of 924C3... But we've already... I think you were here. Some other panel's going to decide that. That's correct. And if this Court has any questions about that issue, specifically, the government would be happy to file supplemental briefing on the issue. Though, as discussed, we urge you to affirm the conviction below if there are no further questions. Thank you. Mr. Zilbersmith. Thank you, Your Honors. Briefly, the alibi issue was also an important issue. It's clearly hearsay, and it was clearly vouching by the prosecutor. Well, it's not hearsay. Isn't it? He didn't offer it for the truth of the matter. He just simply said he offered that Ortiz should be held accountable. He didn't say it was an accurate alibi. He didn't say he was telling the truth. The question was, why didn't you arrest Ortiz at the time? And the answer was, because he had an alibi. It doesn't vouch for his alibi. They may have improperly failed to arrest him. It's merely a statement of fact. It's not a statement of somebody else offered for the truth of the matter, is it? Well, it's offered to show that we didn't arrest this guy because he's not the robber number two. And that is the argument, the exact argument that the prosecutor made in closing. He said the police quickly eliminated him as a suspect. So, I mean, it has, it's for the truth. It's admitted to show that Cesar Ortiz is not robber two. It was you who raised the issue as to why he wasn't arrested. Well, we, it's definitely our assertion that Cesar Ortiz is robber number two, or that there's a reasonable doubt as to that issue. And the police certainly could have brought Cesar Ortiz in to say, I, you know, I was at my grandmother's birthday party at the time, and I have embryo lesions. But instead, you asked the police, why didn't you arrest him? And they said because he had an alibi. It could have, what if they said because he was white? That might have been a terrible reason, but it would have been a reason. The reason that they gave was he had an alibi. They didn't, they didn't say his alibi was true. Well, the prosecutor said it was true. Did she? Or did he? He did. He said, well, the police quickly eliminated him as a suspect. No, all they said was they eliminated him. As we've learned this morning, police make all kinds of mistakes. And you argued that was a mistake on their part. They shouldn't have eliminated him. We did. But he's vouching that the police did an investigation and that they eliminated him. I mean, it's quite, it's quite reasonable for the prosecutor to bring in Cesar Ortiz or to bring in just the grandmother party or wherever he was to say, you know, he wasn't there and therefore jury don't conclude that Cesar Ortiz was robber number two. If they can do that, um, we don't know. But, um, and as, as for the main issue, London is not a standalone case. London relied on the Supreme Court's case in Florida versus Jardines. And the inevitable discovery, uh, document, the doctrine is, is clearly precluded in a case. And the court especially said, How do you deal with Murray? Excuse me? How do you deal with Murray? Murray? Well, what the court said in London is that Tell me what, tell me what, what Murray, your, your colleague says, and she had, it has some force reading Murray, that if you make a search without a warrant, but you show that the, that you would have obtained a warrant at the time, had you known it was illegal. Well, And, and, you know, Murray seems to suggest that their inevitable discovery document argument is correct. London deals with a case in which a warrant is never, Never sought. Never sought. So tell, tell me why in, in the case in which the warrant is actually sought, uh, London applies. Well, there's, there's two arguments. One is what do they inevitably discover? And then there's also the question of Murray. And as to the Murray argument, what this court said in London is under Murray, this gives the wrong incentives. Why would you get a warrant if you're just going to say, I'm going to try it without a warrant and I would have gotten a warrant anyways. But here, but in this case, they actually got one and that's the, right? They did. They actually did obtain a warrant. They did, but they got the, but the whole point is they went into the house at four in the morning without getting a warrant. And they went into the intimate bedroom, you know, is, is the magistrate going to say a nighttime warrant or a daytime warrant? What is he going to say? And then what do you discover at 12 noon? You're not going to discover three men sleeping in a bed together, um, it wearing the same clothes they were wearing at night at the, they were wearing at four in the morning. At noon, they're going to be showered. They're going to be out having breakfast. Uh, there might be some evidence where you could say we found them having breakfast or brunch together at noon or, or, or we saw them trying to leave the house, but it's not the same. Yes, it's not the same force and effect of finding them in the room together. So again, Your Honor, if the court needs me to answer any further questions in supplemental briefing, I'm happy to do so, but we ask you to reverse the conviction. Thank you. United States versus Bailes-Reyes is submitted. Thank you very much. Thank you. And we'll go to the last case on the calendar, which is Saravia versus Sessions.
judges: Hawkins, Bea, Hurwitz